## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**KAREN SPRINKLE,**

   Plaintiff,

  v.

**NATIONSTAR MORTGAGE LLC
d/b/a MR. COOPER,**

   Defendant.

Case No.

Judge

**COMPLAINT FOR DAMAGES**

**JURY DEMAND ENDORSED HEREON**

Plaintiff Karen Sprinkle, through counsel, for her *Complaint for Damages* against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Karen Sprinkle ("Sprinkle" or "Plaintiff") is the owner of residential real property, located at and commonly known as 2325 West Rd., Mobile, AL 36693 (the "Home").

2. Sprinkle currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper" or "Defendant") is a foreign limited liability company formed under the laws of the State of Delaware that maintains its headquarters and principal place of business at 8950 Cypress Waters Blvd., Dallas, TX 75019.

4. Mr. Cooper is the servicer of a note executed by Sprinkle (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). Mr. Cooper has serviced the Loan since October 1, 2014.

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

6.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

7.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

8.     This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

9.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

11.     Sprinkle asserts claims for relief against Mr. Cooper for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

12.     Mr. Cooper is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

13.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

14.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

15.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

16.     Sprinkle has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

### (Issues Concerning the Amount to Reinstate the Loan)

17.     On August 27, 2008, Sprinkle obtained the Loan from non-party American General Financial Services of Alabama, Inc.

18.     In December 2021, Sprinkle encountered difficulty with making her monthly mortgage payments.

19.     On or about April 18, 2022, Mr. Cooper sent a letter to Sprinkle claiming that the Loan was past due for the February 2022 payment and Sprinkle was required to pay $5,527.58 ("Reinstatement Amount #1) by May 23, 2022 to cure the default (the "Delinquency Letter"). A copy of the Delinquency Letter is attached as **Exhibit 1**.

20.     Sprinkle has independently verified that Reinstatement Amount #1 was accurate as of April 18, 2022, based on her review of Mr. Cooper's Transaction History:

| Date | Description | Debit | Credit | Balance |
|------|-------------|-------|--------|---------|
| 12/5/2021 | Payment due | $1,725.53 | $0.00 | $1,725.53 |

| 12/15/2021 | Late fee | $73.80 | $0.00 | $1,799.33 |
| 1/4/2022 | Payment made | $0.00 | $1,725.53 | $73.80 |
| 1/4/2022 | Payment to interest | $0.00 | $73.80 | $0.00 |
| 1/5/2022 | Payment due | $1,725.53 | $0.00 | $1,725.53 |
| 1/18/2022 | Late fee | $70.11 | $0.00 | $1,795.64 |
| 2/5/2022 | Payment due | $1,725.53 | $0.00 | $3,521.17 |
| 2/15/2022 | Late fee | $73.80 | $0.00 | $3,594.97 |
| 2/17/2022 | Late charge adjustment | $0.00 | $3.69 | $3,591.28 |
| 3/1/2022 | Lender paid expense | $15.00 | $0.00 | $3,606.28 |
| 3/5/2022 | Payment due | $1,714.56 | $0.00 | $5,320.84 |
| 3/15/2022 | Late fee | $73.80 | $0.00 | $5,394.64 |
| 3/18/2022 | Late charge adjustment | $0.00 | $3.69 | $5,390.95 |
| 4/1/2022 | Payment | $0.00 | $1,651.73 | $3,739.22 |
| 4/5/2022 | Payment due | $1,714.56 | $0.00 | $5,453.78 |
| 4/15/2022 | Late fee | $73.80 | $0.00 | $5,527.58 |

A copy of Mr. Cooper's Transaction History through December 14, 2022 is attached as **Exhibit 2**.

21.     Since Sprinkle did not remit $5,527.58 to Mr. Cooper by May 23, 2023, Mr. Cooper referred the Loan to foreclosure on June 24, 2022.

22.     As Sprinkle would later learn, on or about June 9, 2022, Mr. Cooper generated a reinstatement quote in the amount of $33,070.60 ("Reinstatement Amount #2"). According to Mr. Cooper's explanation, Reinstatement Amount #2 consisted of:

| Past due principal and interest: | $7,380.10 |
| Escrow: | $1,203.67 |
| Corporate Advance total: | $110.00 |
| Late fees: | $428.04 |
| Current Accrual: | $31,328.89 |

23.     According to Mr. Cooper's Transaction History, the amount to bring the Loan current as of June 9, 2022 was $9,121.81:

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| 4/15/2022 | Balance from previous table | | | $5,527.58 |
| 4/21/2022 | Late charge adjustment | $0.00 | $3.69 | $5,523.89 |
| 5/5/2022 | Payment due | $1,714.56 | $0.00 | $7,238.45 |
| 5/16/2022 | Late fee | $73.80 | $0.00 | $7,312.25 |
| 6/2/2022 | Lender paid expense | $95.00 | $0.00 | $7,407.25 |

| 6/5/2022 | Payment due | $1,714.56 | $0.00 | $9,121.81 |

*See* Exhibit 2.

24.     The amounts for past due principal and interest, escrow, corporate advances, and late fees as stated by Reinstatement Amount #2 also add up to $9,121.81.

25.     On or about August 17, 2022, Mr. Cooper sent Sprinkle a periodic billing statement for the Loan (the "August Statement") stating that the amount due and owing for, and as of the September 5, 2022 due date, was $14,229.29, consisting of:

| | |
|---|---|
| REGULAR MONTHLY PAYMENT | $1,714.56 |
| TOTAL FEES & CHARGES | $501.84 |
| OVERDUE PAYMENT(S) | $12,012.89 |
| PARTIAL PAYMENT (UNAPPLIED) | $0.00 |
| TOTAL AMOUNT DUE | $14,229.29 |

A copy of the August Statement is attached as **Exhibit 3**.

26.     According to Mr. Cooper's Transaction History, the amount as stated in the August Statement is accurate:

| Date | Description | Debit | Credit | Balance |
|---|---|---|---|---|
| 6/5/2022 | Balance from previous table | | | $9,121.81 |
| 6/15/2022 | Late fee | $73.80 | $0.00 | $9,195.61 |
| 6/29/2022 | Lender paid expense | $20.00 | $0.00 | $9,215.61 |
| 7/5/2022 | Payment due | $1,714.56 | $0.00 | $10,930.17 |
| 7/26/2022 | Lender paid expense | $20.00 | $0.00 | $10,950.17 |
| 8/5/2022 | Payment due | $1,714.56 | $0.00 | $12,664.73 |
| - | *Future payment due*[1] | *$1,714.56* | *$0.00* | *$14,379.29* |
| - | *Without lender paid expenses* | *$0.00* | *$150.00* | *$14,229.29* |

*See* Exhibit 2.

---

[1] The amount stated in the August Statement excludes the lender paid expenses of $15.00, $95.00, $20.00, and $20.00 but includes the monthly payment of $1,714.56 due September 5, 2022.

27.     In reliance on the August Statement, Sprinkle remitted a payment in the amount of $14,229.29 (the "Payment").

28.     On or about October 12, 2022, Mr. Cooper sent a letter to Sprinkle, stating that the Payment, despite being sufficient to satisfy the amount due and owing per the August Statement, was "insufficient to bring the account current" (the "Return Funds Notice"). A copy of the Return Funds Notice is attached as **Exhibit 4**.

29.     On or about October 25, 2022, Mr. Cooper sent Sprinkle a letter labeled "Research Reference #0005581108" (the "Research Letter"). A copy of the Research Letter is attached as **Exhibit 5**.

30.     The Research Letter states that Mr. Cooper provided Sprinkle with Reinstatement Amount #2 good through October 27, 2022. *See* Exhibit 5.

### (Sprinkle's Attempts to Have Mr. Cooper Correct its Errors)

31.     At the end of October 2022, Sprinkle engaged counsel for representation to request information relating to the Loan and help correct Mr. Cooper's accounting errors.

32.     On October 28, 2022, Sprinkle, through counsel, sent a request for information, pursuant to 12 C.F.R. § 1024.36, seeking information concerning the Loan, including a transaction history of the Loan, escrow analyses, a reinstatement quote, and information related to loss mitigation, among other items (the "RFI") to Mr. Cooper at the address designated by Mr. Cooper for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address") via Certified Mail. A copy of the RFI and tracking information is attached as **Exhibit 6**.

33.     Mr. Cooper received the RFI at the Designated Address on November 1, 2022. *See* Exhibit 6

34.     On or about November 9, 2022, Mr. Cooper sent Sprinkle a response to the RFI (the "RFI Response"). A copy of the cover pages of the RFI Response is attached as **Exhibit 7**.

35.     The RFI Response failed to provide Sprinkle with a full transaction history, any servicing notes, broker's price opinions, and information and/or documents relating to loss mitigation. *See* Exhibit 7.

36.     The RFI Response states that the most recent billing statement "will reflect the current amount due on the loan and also provide a breakdown of any fees assessed." *See* Exhibit 7.

37.     The RFI Response includes two loss mitigation letters dated January 16, 2022 and June 3, 2022.

  a.  The January 16, 2022 letter refers to a request for loss mitigation assistance, but Mr. Cooper failed to provide any information or documents concerning this request for assistance.

  b.  The June 3, 2022 letter is a loss mitigation evaluation notice that claims that Sprinkle was denied an "Alternative Modification" because "either [the] mortgage was previously modified and became 60 or more days delinquent within 12 months of the modification effective date, or [the] mortgage has been previously modified three or more times." Mr. Cooper failed to provide any information or documents relating to any previous modification.

Copies of the loss mitigation letters are attached as **Composite Exhibit 8**.

38.     On their face, the loss mitigation letters refer to information and documents in Mr. Cooper's possession that Mr. Cooper has refused to provide in response to the RFI. *See* Exhibit 8.

39.    On information and belief, Mr. Cooper is withholding further documents related to the Loan that Sprinkle is entitled to receive.

40.    The June 3, 2022 loss mitigation letter also directs Sprinkle to her monthly billing statement if she wished to reinstate the Loan. *See* Exhibit 8.

41.    On or about November 4, 2022, Sprinkle, through counsel, sent a notice of error ("NOE #1") to Mr. Cooper to the Designated Address via Certified Mail. A copy of the cover pages for NOE #1 and tracking information is attached as **Exhibit 9**.

42.    Through NOE #1, Sprinkle asserted that Mr. Cooper:

a.    Failed to accept, cash, credit, or otherwise apply payments towards the Loan pursuant to the terms of the Loan; and

b.    Imposed or attempted to collect improper fees or charges without a reasonable basis to do so.

*See* Exhibit 9.

43.    NOE #1 refers to and encloses a copy of the Research Letter, which claims that Sprinkle was required to remit $33,070.60 to reinstate the Loan, and asks Mr. Cooper to explain how the reinstatement amount had more than doubled as compared to the August Statement. *See* Exhibit 9.

44.    NOE #1 also contains a request for information pursuant to 12 C.F.R. § 1024.36, seeking:

a.    Servicing notes from August 1, 2022;

b.    Copies of communications from August 1, 2022 concerning Sprinkle's attempts to reinstate the Loan or any accounting dispute;

c.    A detailed breakdown of the fees and charges assessed to the Loan; and,

        d.  A detailed breakdown of all amounts comprising Reinstatement Amount #2.

*See* Exhibit 9.

45.     Mr. Cooper received NOE #1 at the Designated Address on November 14, 2022.

46.     On or about November 15, 2022, Mr. Cooper sent Sprinkle a response to NOE #1 (the "NOE #1 Response"). A copy of the cover pages of the NOE #1 Response is attached as **Exhibit 10**.

47.     In the NOE #1 Response, Mr. Cooper confirms that the amount to cure the Loan's delinquency was $5,527.58 as of April 18, 2022. *See* Exhibit 10.

48.     Mr. Cooper states that the amount on the monthly mortgage statements it provides to its customers in foreclosure "will not be valid as there will be other associated cost and fees that may be associated with the foreclosure." *See* Exhibit 10.

49.     Mr. Cooper claims it rejected the Payment because when it received the Payment "another monthly payment had become due" and therefore the Payment "was not enough to reinstate the account and would not be accepted". *See* Exhibit 10.

50.     Mr. Cooper then states that the amount to reinstate the Loan as of November 9, 2022 was $41,839.10 ("Reinstatement Amount #3). *See* Exhibit 10.

51.     Mr. Cooper provides a breakdown of Reinstatement Amount #3:

| | |
|---|---|
| Past due principal and interest: | $14,760.20 |
| Escrow: | $2,396.37 |
| Corporate Advance total: | $1,360.00 |
| Escrow changes [*sic*]: | 4263.79 |
| Late fees: | $501.84 |
| Current Accrual: | $37,580.89 |

*See* Exhibit 10.

52.     These numbers fail to add up to $41,839.10 and Mr. Cooper failed to explain the line item for "Current Accrual". *See* Exhibit 10.

53.    Additionally, Mr. Cooper failed to provide any servicing notes or copies of communications with the NOE #1 Response. *See* Exhibit 10.

54.    As a direct and proximate result of Mr. Cooper failing to provide any justification for the $27,543.02 difference between Reinstatement Amount #1 and Reinstatement Amount #2 or properly explain the nature of the line item for "Current Accrual", on or about December 1, 2022, Sprinkle sent a second notice of error ("NOE #2") to Mr. Cooper at the Designated Address via Certified Mail. A copy of NOE #2 and tracking information is attached as **Exhibit 11**.

55.    Through NOE #2, Sprinkle asserted that Mr. Cooper:

   a.   Failed to perform a reasonable investigation and properly respond to NOE #1; and

   b.   Failed to provide the information requested through NOE #1.

*See* Exhibit 11.

56.    NOE #2 also contains a request for copies of documentation and information pursuant to 12 C.F.R. § 1024.35(e)(4) (the "NOE Request"), seeking copies of documentation upon which Mr. Cooper relied in claiming through the NOE #1 Response that no errors occurred. *See* Exhibit 11.

57.    Mr. Cooper received NOE #2 at the Designated Address on December 8, 2022. *See* Exhibit 11.

58.    On or about December 22, 2022, Mr. Cooper sent Sprinkle a response to NOE #2 (the "NOE #2 Response"). A copy of the cover pages of the NOE #2 Response is attached as **Exhibit 12**.

59.    The NOE #2 Response is nearly identical to the NOE #1 Response and provides no additional documents. *Compare* Exhibit 10 with Exhibit 12.

60.     Since the NOE Request requested copies of documents and information relied upon by the servicer in making its determination that no error occurred, and Mr. Cooper failed to produce any new information or documents, Mr. Cooper has effectively admitted that it has no justification for trying to collect the amount labeled as "Current Accrual".

61.     Despite repeated attempts to discern how the nature of the $27,543.02 difference between Reinstatement Amount #1 and Reinstatement Amount #2, Mr. Cooper has failed to provide any explanation to date.

## IMPACT AND DAMAGES

62.     Mr. Cooper has prevented Sprinkle from reinstating the Loan and has unnecessarily forced the Loan to remain in a default state for an extended time.

63.     Mr. Cooper scheduled a foreclosure sale for February 9, 2023 and Sprinkle is in imminent danger of losing the Home.

64.     Mr. Cooper's improper actions caused Sprinkle to suffer from actual and proximate damages including, but not limited to:

      a.  Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Sprinkle is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled, and refusal to refund the full amount of the improperly collected fees and charges;

      b.  Legal fees, costs, and expenses to submit requests for information and notices of error to Mr. Cooper in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this

matter, or to have Mr. Cooper mitigate the harm caused to Sprinkle to which she did not receive a proper or adequate responses;

c.   Withholding important information and documents relating to the Loan;

d.   Significant delay in the rehabilitation of Sprinkle's credit; and,

e.   Severe emotional distress driven by Mr. Cooper's failure to properly handle the accounting of the Loan and by the justified fear that such blatant indifference will result in the sale of the Home on February 9, 2023, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

65.   Throughout this entire ordeal, Sprinkle has simply wanted to pay what she owes to reinstate the Loan, be assured that any funds that she remits to Mr. Cooper are properly applied to the Loan, and most importantly remain in the Home.

## PATTERN AND PRACTICE OF MR. COOPER'S VIOLATIONS OF RESPA AND REGULATION X

66.   Mr. Cooper's actions are part of a pattern and practice of behavior in violation of Sprinkle's rights and in abdication and contravention of Mr. Cooper's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

67.   Mr. Cooper has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

68.   Sprinkle has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Mr. Cooper engaged in similar conduct against other borrowers. In particular, Sprinkle have reviewed the fifteen (15) consumer complaints attached hereto and

identified as **Group Exhibit 13**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Mr. Cooper has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE
## VIOLATIONS OF RESPA AND REGULATION X
### 12 U.S.C. § 2605(k) AND 12 C.F.R. § 1024.36(d)

69.     Sprinkle restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

70.     "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

71.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

72.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.36(c).

73.     A servicer must respond to a request for information by:

(i)     Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact

information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

74.     Furthermore, a servicer must properly respond to a request for information within the following deadlines:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A)   Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B)   For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

**(The RFI)**

75.     The RFI constitutes a request for information as defined by 12 C.F.R. § 1024.35(a) as it is a written request from Sprinkle that included her name, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 6.

76.     Mr. Cooper received the RFI at the Designated Address on November 1, 2022. *See* Exhibit 6.

77.     On or about November 9, 2022, Mr. Cooper sent Sprinkle the RFI Response. *See* Exhibit 7.

78.     The RFI Response failed to provide Sprinkle with a full transaction history, any servicing notes, broker's price opinions, and information and/or documents relating to loss mitigation. *See* Exhibit 7.

79.     The RFI Response provides the loss mitigation letters that refer to information and documents in Mr. Cooper's possession that Mr. Cooper refused to provide in response to the RFI. *See* Exhibit 7.

80.     On information and belief, Mr. Cooper is withholding further documents related to the Loan that Sprinkle is entitled to receive.

### (NOE #1)

81.     NOE #1 constitutes a request for information as defined by 12 C.F.R. § 1024.36(a) as it is a written request from Sprinkle that included her name, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 9.

82.     NOE #1 sought:

    a.  Servicing notes from August 1, 2022;

    b.  Copies of communications from August 1, 2022 concerning Sprinkle's attempts to reinstate the Loan or any accounting dispute;

    c.  A detailed breakdown of the fees and charges assessed to the Loan; and,

    d.  A detailed breakdown of all amounts comprising Reinstatement Amount #2.

*See* Exhibit 9.

83.     Mr. Cooper received NOE #1 at the Designated Address on November 14, 2022.

84.     On or about November 15, 2022, Mr. Cooper sent Sprinkle the NOE #1 Response. *See* Exhibit 10.

85.     The NOE #1 Response failed to provide Sprinkle any of the information or documents requested through NOE #1. *See* Exhibit 10.

### (NOE #2)

86.     NOE #2 constitutes a request for information as defined by 12 C.F.R. § 1024.36(a) as it is a written request from Sprinkle that included her name, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibit 11.

87.     NOE #2 sought:

    a.  Servicing notes from August 1, 2022; and

    b.  Copies of communications from August 1, 2022 concerning Sprinkle's attempts to reinstate the Loan or any accounting dispute.

*See* Exhibit 11.

88.     Mr. Cooper received NOE #2 at the Designated Address on December 8, 2022. *See* Exhibit 11.

89.     On or about December 22, 2022, Mr. Cooper sent Sprinkle the NOE #2 Response. *See* Exhibit 12.

90.     The NOE #2 Response failed to provide Sprinkle any of the information or documents requested through NOE #2. *See* Exhibit 12.

91.     Mr. Cooper improperly refused to provide copies of communications with no valid justification, as the requests were limited in time (three months) and scope (related to Sprinkle's attempts to reinstate the Loan or verify the accuracy of the Loan's accounting).

92.     Mr. Cooper's actions constitute a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and has caused Sprinkle to suffer actual damages as detailed, *supra*, at ¶ 64.

93.     Further, Mr. Cooper's failure to comply with 12 C.F.R. § 1024.36(d) caused the Sprinkle's attorneys' fees and costs associated with the preparation of the RFI, NOE #1, and NOE #2 to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d

712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

94.      Mr. Cooper's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Sprinkle's rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

95.      As a result of Mr. Cooper's actions, Mr. Cooper is liable to Sprinkle for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

96.      Additionally, Sprinkle requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO**
**VIOLATIONS OF RESPA AND REGULATION X**
**12 U.S.C. § 2605(k) AND 12 C.F.R. § 1024.35(e)(1)**

97.      Sprinkle restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

98.      "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

99.      Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

100.     12 C.F.R. § 1024.35(e)(1) provides:

> (i)     ***In general.*** A servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

(ii)   ***Different or additional error.*** If during a reasonable investigation of a notice of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower, the servicer shall correct all such additional errors and provide the borrower with a written notification that describes the errors the servicer identified, the action taken to correct the errors, the effective date of the correction, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

101.   A servicer must respond to a notice of error in compliance with 12 C.F.R. §

1024.35(e)(1):

(A)   Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)   Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

        (C)   For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

102.    "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

103.    A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

**(NOE #1)**

104.    NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is is a written notice from Sprinkle that includes her name, mortgage loan account number, and property address and asserts errors that she believed to have occurred. *See* Exhibit 9.

105.    Through NOE #1, Sprinkle asserted that Mr. Cooper:

        a.   Failed to accept, cash, credit, or otherwise apply payments towards the Loan pursuant to the terms of the Loan; and

        b.   Imposed or attempted to collect improper fees or charges without a reasonable basis to do so.

*See* Exhibit 9.

106.    NOE #1 refers to and encloses a copy of the Research Letter, which claims that Sprinkle was required to remit $33,070.60 to reinstate the Loan, and asks Mr. Cooper to explain

how the reinstatement amount had more than doubled as compared to the August Statement. *See* Exhibit 9.

107.    Mr. Cooper received NOE #1 at the Designated Address on November 14, 2022.

108.    On or about November 15, 2022, Mr. Cooper sent Sprinkle the NOE #1 Response. *See* Exhibit 10.

109.    In the NOE #1 Response, Mr. Cooper makes no attempt to explain the nature of the $27,543.02 difference between Reinstatement Amount #1 and Reinstatement Amount #2.

110.    Mr. Cooper states that the amount on the monthly mortgage statements it provides to its customers in foreclosure "will not be valid as there will be other associated cost and fees that may be associated with the foreclosure." *See* Exhibit 10.

111.    This statement directly contradicts Mr. Cooper's statement in the June 3, 2023 loss mitigation letter that states: "To Reinstate your mortgage, please refer to your Monthly Billing Statement." *See* Exhibit 8.

112.    Mr. Cooper claims it rejected the Payment because when it received the Payment "another monthly payment had become due" and therefore the Payment "was not enough to reinstate the account and would not be accepted". Mr. Cooper then states that the amount to reinstate the Loan as of November 9, 2022 was $41,839.10. *See* Exhibit 10.

113.    The addition of another monthly payment of $1,714.56 does not explain the $27,543.02 difference between Reinstatement Amount #1 and Reinstatement Amount #2.

114.    Reinstatement Amount #3's line item numbers fail to add up to the $41,839.10 total and Mr. Cooper failed to explain the line item for "Current Accrual". *See* Exhibit 10.

115.    Mr. Cooper failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Mr. Cooper did not admit that any errors occurred as alleged in NOE #1.

116.    Mr. Cooper did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that Mr. Cooper did not perform a reasonable investigation into the errors alleged through NOE #1, as it would have discovered that it was improperly attempting to collect amounts that were not due pursuant to the Loan, i.e. the amount for Current Accrual.

### (NOE #2)

117.    NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is is a written notice from Sprinkle that includes her name, mortgage loan account number, and property address and asserts errors that she believed to have occurred. *See* Exhibit 11.

118.    Through NOE #2, Sprinkle asserted that Mr. Cooper:

    a.  Failed to perform a reasonable investigation and properly respond to NOE #1; and

    b.  Failed to provide the information requested through NOE #1.

*See* Exhibit 11.

119.    Mr. Cooper received NOE #2 at the Designated Address on December 8, 2022. *See* Exhibit 11.

120.    On or about December 22, 2022, Mr. Cooper sent Sprinkle the NOE #2 Response. *See* Exhibit 12.

121.    The NOE #2 Response is nearly identical to the NOE #1 Response and provides no additional information or documents. *Compare* Exhibit 10 with Exhibit 12.

122.    There are only three differences between the two responses:

    a.  Mr. Cooper provides the above referenced breakdown of Reinstatement Amount #2 in the NOE #2 Response instead of a breakdown of Reinstatement Amount #3;

b.  Instead of explaining the nature of the line item for "Current Accrual", Mr. Cooper provides a definition of daily simple interest.

c.  Mr. Cooper states that it was refusing to provide copies of communications because of their "voluminous" nature.

*Compare* Exhibit 10 with Exhibit 12.

123.    The use of daily simple interest does not explain the $27,543.02 difference between Reinstatement Amount #1 and Reinstatement Amount #2.

124.    Mr. Cooper failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as Mr. Cooper did not admit that any errors occurred as alleged in NOE #2.

125.    Mr. Cooper did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that Mr. Cooper did not perform a reasonable investigation into the errors alleged through NOE #1, as the NOE #2 Response is nearly identical to the NOE #1 Response.

126.    Mr. Cooper's failure to properly respond to NOE #1 and NOE #2 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOE constitutes a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and caused Sprinkle to suffer actual damages as detailed, *supra*, at ¶ 64, including, but not limited to Mr. Cooper's failure to correct the Loan's accounting. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

127.    Further, Mr. Cooper's failure to comply with 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. § 2605(k) caused Sprinkle's attorneys' fees and costs associated with the preparation of

NOE #1 and NOE #2 to metamorphose into damages. *Marais II*, 24 F. Supp. 3d at 726-728; *Marais I*, 736 F.3d at 721.

128.   Mr. Cooper's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Sprinkle's rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

129.   As a result of Mr. Cooper's actions, Mr. Cooper is liable to Sprinkle for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

130.   Additionally, Sprinkle requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE**
**VIOLATIONS OF RESPA AND REGULATION Z**
**12 U.S.C. § 2605(k) AND 12 C.F.R. § 1024.35(e)(4)**

131.   Sprinkle restates and incorporates all of the allegations contained in paragraphs 1 through 68 in their entirety, as if fully rewritten herein.

132.   "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

133.   Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

134.   A servicer is required to provide to a borrower, at no charge:

> [C]opies of documents and information relied upon by the servicer in making its determination that no error occurred within 15 days (excluding legal public holidays, Saturdays, and Sundays) of receiving the borrower's request for such documents. A servicer is

not required to provide documents relied upon that constitute confidential, proprietary or privileged information. If a servicer withholds documents relied upon because it has determined that such documents constitute confidential, proprietary or privileged information, the servicer must notify the borrower of its determination in writing within 15 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of the borrower's request for such documents.

12 C.F.R. § 1024.35(e)(4).

135.    A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

136.    NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is is a written notice from Sprinkle that includes her name, mortgage loan account number, and property address and asserts errors that she believed to have occurred. *See* Exhibit 9.

137.    Mr. Cooper received NOE #1 at the Designated Address on November 14, 2022.

138.    On or about November 15, 2022, Mr. Cooper sent Sprinkle the NOE #1 Response. *See* Exhibit 10.

139.    Through NOE #1 Response, Mr. Cooper claimed that "it has been determined that no error occurred." *See* Exhibit 10.

140.    Mr. Cooper provided three documents to Sprinkle in support of its assertion contained in the NOE #1 Response. *See* Exhibit 10.

141.    However, none of these documents explain the $27,543.02 difference between Reinstatement Amount #1 and Reinstatement Amount #2:

    a.  The Demand Letter (Exhibit 1) stated that Sprinkle was required to pay $5,527.58 by Mau 23, 2022 to reinstate the Loan. Sprinkle has independently verified that this number was accurate as of April 18, 2022. *See* ¶ 20.

    b.  Mr. Cooper's Transaction History (<u>Exhibit 2</u>) makes no reference to "Current Accrual" and Sprinkle has used its contents to independently verify the true amounts owed at different times. *See* ¶¶ 20, 23, 26.

    c.  The Return Funds Notice (<u>Exhibit 4</u>) simply states that Mr. Cooper is returning the Payment.

142.    Accordingly, on or about December 1, 2022, Sprinkle sent the NOE Request seeking copies of documentation upon which Mr. Cooper relied in claiming through the NOE #1 Response that no errors occurred. *See* <u>Exhibit 11</u>.

143.    Mr. Cooper received the NOE Request at the Designated Address on December 8, 2022. *See* <u>Exhibit 11</u>.

144.    On or about December 22, 2022, Mr. Cooper sent Sprinkle the NOE #2 Response. *See* <u>Exhibit 12</u>.

145.    The NOE #2 Response is nearly identical to the NOE #1 Response and provides no additional information or documents. *Compare* <u>Exhibit 10</u> with <u>Exhibit 12</u>.

146.    There are only three differences between the two responses:

    a.  Mr. Cooper provides the above referenced breakdown of Reinstatement Amount #2 in the NOE #2 Response instead of a breakdown of Reinstatement Amount #3;

    b.  Instead of explaining the nature of the line item for "Current Accrual", Mr. Cooper provides a definition of daily simple interest.

    c.  Mr. Cooper states that it was refusing to provide copies of communications because of their "voluminous" nature.

*Compare* <u>Exhibit 10</u> with <u>Exhibit 12</u>.

147.    Mr. Cooper's failure to provide the documentation that Mr. Cooper relied upon in drafting the NOE #1 Response constitutes a violation of 12 C.F.R. § 1024.35(e)(e) and 12 U.S.C. § 2605(k) and caused Sprinkle to suffer actual damages as detailed, *supra*, at ¶ 64.

148.    Further, Mr. Cooper's failure to comply with 12 C.F.R. § 1024.35(e)(4) and 12 U.S.C. § 2605(k) caused Sprinkle's attorneys' fees and costs associated with the preparation of the NOE Request to metamorphose into damages. *Marais II*, 24 F. Supp. 3d at 726-728; *Marais I*, 736 F.3d at 721.

149.    Mr. Cooper's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Sprinkle's rights and in abdication of Mr. Cooper's obligations under RESPA and Regulation X.

150.    As a result of Mr. Cooper's actions, Mr. Cooper is liable to Sprinkle for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

151.    Additionally, Sprinkle requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Karen Sprinkle respectfully requests that this Court enter an Order granting Judgment against Defendant Nationstar Mortgage, LLC d/b/a Mr. Cooper as follows:

A.    Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Three;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) per violation of RESPA contained in Counts One through Three;

C.    Costs and reasonable attorneys' fees as to Counts One through Three; and,

D.    Such other relief which this Court may deem appropriate.

## **<u>JURY DEMAND</u>**

Plaintiff Karen Sprinkle hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

Wesley H. Blacksher
**Wesley H. Blacksher, LLC**
917 Western America Circle, Suite 210
Mobile, AL 36609
Telephone: (251) 432-1010
Facsimile: (251) 343-2344
blacksherlaw@gmail.com